IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 19-cv-_____ |
| ) | |
| UNIVERSITY OF DELAWARE, BOARD ) | |
| OF TRUSTEES OF THE UNIVERSITY OF ) | |
| DELAWARE, and DANICA MYERS, ) | |
| ) | |
|     Defendants. ) | |

## COMPLAINT

### THE PARTIES

1. Plaintiff John Doe ("Doe") is a Delaware resident and former student who was previously enrolled at the University of Delaware. Because of the nature of the subject matter involved in this action, a pseudonym is used to maintain the anonymity of Doe's identity.

2. Defendant University of Delaware (the "University") is a State Chartered educational organization created by the Delaware General Assembly pursuant to Title 14, Chapter 51 of the Delaware Code, with administrative offices located at Hulihen Hall on South College Avenue in Newark, Delaware.

3. Defendant Board of Trustees of the University of Delaware (the "Board") is the 28-person governing body of the University, established by the Delaware General Assembly pursuant to Title 14, Chapter 51 of the Delaware Code, with administrative offices located at Hulihen Hall on South College Avenue in Newark, Delaware ("Hulihen Hall"). All 28 individual members of the Board, who combined possess all legal authority to operate and conduct the business and affairs of the University, are hereby named as Defendants by reference. The Board is responsible for all University acts and failures to act alleged herein as the legally supervising

authority over all University matters. The University and Board constitute State agencies for purposes of United States Constitutional protections and rights.

4. Defendant Danica Myers ("Myers") is the Interim Title IX Coordinator and Director of the University's Office of Equity & Inclusion and as such she oversees the University's Sexual Misconduct Policy process, procedures, and implementation. Her office is located in Hulihen Hall. Myers is an agent of the University and Board charged with carrying out policies promulgated by them, including the Sexual Misconduct Policy.

## JURISDICTION & VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 since this case arises under laws of the United States, to-wit: 42 U.S.C. § 1983 and 20 U.S.C. § 1681. This Court has supplemental jurisdiction over the State law claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

6. Personal jurisdiction in this judicial district over the Defendants is proper since they all reside in the State of Delaware or have contacts with the State of Delaware as Members of the Board and persons with legal offices in Delaware.

7. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 since Doe, the University, the Board, and Myers are all legally situated in the District of Delaware.

## THE FACTS

A. Doe Completes His Course Of Study, Unconditionally Earns His Degree & Graduates By June 1, 2019

8. Doe was enrolled in a Bachelor's Degree program at the University of Delaware from Fall Semester 2016 through the end of Spring Semester 2019.

9. Doe successfully completed all requirements needed to obtain his Bachelor's Degree by late May of 2019.

10. Doe participated in the formal graduation ceremonies conducted by the University on June 1, 2019.

11. Doe ceased his enrollment at the University effective as of his completion of his course of study in May 2019, without any conditions, contingencies, or other limitations or requirements.

12. The University never advised Doe that the completion of his course of study and satisfaction of all requirements to graduate could be interrupted or interfered with prior to his graduation on June 1st.

B. **Doe Is Poised To Become A Commissioned Officer In The U.S. Military, But The Defendant's Unlawfully Foil That Event**

13. During his tenure as a student at the University, Doe was enrolled in the Reserve Officer Training Corps with the United States Military (the "ROTC Program").

14. Pursuant to the ROTC Program: a) substantial monetary reimbursements for education costs, tuition, and fees were paid to Doe; b) Doe successfully completed all requisites of training and associated ROTC Program requirements; and c) Doe was slated to be commissioned as a 2nd Lieutenant in the United States Military, subject only to receipt of his formal Diploma from the University and the associated confirmation that his Bachelor's Degree had been conferred by the University.

15. Because Doe completed his course of study and was entitled to receive his Diploma and Bachelor's Degree from the University, it was a foregone conclusion that he would be inducted as a Commissioned Officer effective early June 2019. But that could not occur due to the improper actions of the University, Board, and Myers as set forth hereinafter.

C. Doe Is Subjected To An Unconstitutional & Legally Infirm Disciplinary Process By The Defendants

16. In mid-December of 2018, Doe was informed in writing by the University (the "University Notice Letter") that a complaint ("Complaint") had been initiated against him by a female student. She is referred to herein via the pseudonym "Roe" for purposes of maintaining her confidentiality and anonymity based on the nature of the subject matter at issue.

17. In the Complaint, Roe alleged that Doe had committed a violation of the University's Sexual Misconduct Policy (the "Policy").

18. The University Notice Letter, however, only advised Doe that he was alleged to have committed "sexual assault" without providing any factual details or other foundational underpinning for that conclusory statement.

19. Upon information and belief, the Board is aware of, and has expressly and/or tacitly approved, the Policy, Title IX, and the limits of jurisdiction under both. And the Board is aware of, and has expressly and/or tacitly approved, Myers' role under the Policy and Title IX.

20. The Policy was adopted by the University and the Board in order to carry out their legal obligations under Federal law, namely 20 U.S.C. § 1681 *et seq.*, which prohibits sexual discrimination by educational institutions. The Federal law is typically referred to by the shorthand name "Title IX," which is how it is referred to herein.

21. The Policy concedes that its jurisdiction is limited to the bounds of Title IX and that its procedures are provided for in order to comply with Title IX. But the incident upon which the Complaint was based had no nexus with any University program or activity; the Complaint should have been dismissed and never pursued based upon lack of jurisdiction.

22. The University did not provide Doe with a copy of the Complaint, as required by the Policy.

23. Nor did the University provide Doe with notice of even a summary of the allegations contained in the Complaint. Instead, Doe was only advised that it was alleged he committed "sexual assault," which is a mere amorphous and conclusory statement.

24. The University proceeded to follow some of the initial steps in the procedures provided for in the Policy, including an explanation/introductory meeting with Doe, an interview by an Investigator hired by the University, an opportunity to submit written questions and statements regarding Doe's story, an opportunity to look at (but not obtain a copy of) the Draft Report of the Investigator, an opportunity to make submissions to the sanction board after the Investigator found Doe to be "Responsible," and the right to appeal the Investigator's findings and the penalty imposed by the sanction board.

25. At no time, however, was Doe made aware of the specific allegations in the Complaint. And he was not advised of Roe's story until after it was too late: when he was put on the spot by the Investigator at the interview she conducted.[1]

26. Consistent with the terms of the Policy, Doe was denied the ability to: a) be fully represented by legal counsel; b) receive a hearing; c) receive notice of the predicate acts forming the basis for the charge(s) alleged; d) be advised of the allegations brought by Roe at the earliest opportunity in the proceedings, in order to fully and fairly prepare a defense; and e) cross-examine and confront his accuser. Instead, Roe was shielded, hidden from view, not subjected to adverse questioning, and permitted to avoid the normal procedures that are necessary in order to accord an accused the full panoply of Constitutional Due Process rights.

---

[1] The Investigator was a female attorney retained by the University.

D.     Doe Is Excessively & Illegally Sanctioned By The Defendants; They Arbitrarily Purport To Take His Vested Property Rights Away

27.     According to the University Of Delaware Student Code Of Conduct ("Code of Conduct"), the Policy is the sole legal document governing any alleged violation in the nature of sexual assault, sexual harassment, sexual discrimination, and the like.

28.     Under the Policy, however, a student found to be "Responsible" thereunder is subject to the sanctions provisions of the Code Of Conduct (the "Sanctions").

29.     Sanctions range from the least serious to the most serious forms of punishment as follows: Written Reprimand, Probation, Deferred Suspension, Suspension, Expulsion. In the case of a Suspension or Expulsion, a student may be prevented from completing an ongoing semester of study and suffer a concomitant loss of tuition and other expenses paid for that semester.

30.     Less serious types of Sanctions may form a foundation for the later imposition of more serious Sanctions if any subsequent, additional violations of the Code Of Conduct occur.

31.     Sanctions do not include erasing already completed semesters of study or any vested rights attendant thereto. Nowhere do the Sanctions allow for suspension of an already earned Bachelor's Degree, Diploma, and official Student Transcript ("Transcript").

32.     Doe participated in the process prescribed by the Policy. He was ultimately found Responsible, sanctioned, and his appeal was denied (the "Finding & Sanction"). But the Finding & Sanction did not occur until Doe had earned his Bachelor's Degree, graduated from the University, and ended his enrollment as a student at the University.

33.     The timing of the Finding & Sanction is critical. Doe was no longer enrolled at the University and he had completed his course of study and was entitled to conferral of his Bachelor's Degree, Diploma, and Transcript by that time.

34.     Amazingly, the University purported to retroactively suspend Doe for 2 years (the

"Illegal Suspension") even though he was no longer a student and despite the fact that he had completed his Bachelor's Degree. The Sanctions do not authorize the imposition of a retrospective Suspension; they only allow a prospective Suspension of a currently enrolled student. So the Illegal Suspension constitutes an *Ultra Vires* act.

35. The University also sanctioned Doe via the listing of the Illegal Suspension on his Transcript (the "Transcript Note"). The Transcript Note was to be permanent, unless Doe re-enrolled at the University sometime after the conclusion of the Illegal Suspension.[2] The University later indicated, however, that the Transcript Note would only remain during the 2 year period of the Illegal Suspension.

36. The University has refused and declined to: 1) confer the Bachelor's Degree and Diploma which Doe is entitled to; 2) provide Doe with his Transcript, either with or without the Transcript Note on it; and 3) confirm to the ROTC Program that Doe successfully completed his Bachelor's Degree and received his Diploma.

37. The University's Office of the Registrar has red flagged Doe on its computer system, so as to prohibit him from obtaining his Transcript. And the University has stated in writing that it will not issue Doe his Diploma or Transcript. The University's position is founded solely upon its invalid and illogical theory that it can suspend a former student who is no longer enrolled, post-graduation.

38. Doe had no disciplinary record during the time that he was enrolled at the University and completed all requirements to be conferred his Bachelor's Degree. The alleged conduct which Doe was found Responsible for is at most in the modest range in terms of degree of severity.

---

[2] The requirement for re-enrollment constitutes an admission that Doe was no longer enrolled at the University.

7

39. The University unreasonably and arbitrarily imposed a suspension sanction that far exceeds what the circumstances and Doe's pristine record justified. The University's sanctions were excessive and unreasonable, constitute an erroneous outcome, and are sex-based discrimination in violation of Title IX.

E. The Defendants' Conduct Has Caused Serious & Highly Detrimental Harm To Doe & His Planned Military Career And Service

40. As a result of the University's legally impermissible sanctions against Doe, the ROTC Program has declined to, and cannot, commission Doe as an officer in the United States Military. The ROTC Program has also indicated that Doe may be required to pay back all college education reimbursement amounts paid to him while a student, which total approximately $70,000.

41. Illegal conduct by the Defendants has: a) placed Doe in limbo, unable to proceed to Officer Training and subsequent military assignment; and b) raised the prospect of a large debt owed by him.

42. Doe is unable to commence his military service to our nation. The delay in his ability to commence the honorable service he has trained and studied years to undertake may eventually eliminate his ability to become a commissioned officer at all.

F. The Defendants Have Breached Doe's Enrollment Contract, Taken Valuable Property Rights, Exceeded Their Jurisdiction & Violated Doe's Constitutional Rights

43. Doe's tenure at the University was based upon an enrollment agreement (the "Enrollment Contract"). Upon information and belief, the Enrollment Contract provided that if Doe complied with all Bachelor's Degree requirements and paid all sums due, then the University would issue a Bachelor's Degree to him.

44. Doe earned his Bachelor's Degree by paying all amounts due and completing all requirements. The University had no legal basis to deny Doe his Diploma, a written confirmation

that his Bachelor's Degree has been conferred, and a copy of his Transcript *sans* any reference to the Illegal Suspension.

45. The University has denied Doe his Delaware State property rights to receive his Bachelor's Degree, a clean Transcript, and his Diploma.

46. Title IX expressly provides that its scope is limited to matters that fall within the bounds of University programs and activities. The University lacked jurisdiction to subject Doe to the Policy under the circumstances alleged in the Complaint.

47. The alleged incident which formed the basis for the Complaint involved an encounter between Doe and Roe at Roe's apartment located on private property off of the University's campus between June 30, 2018 and July 1, 2018. At that time, the University was out of session and neither Doe nor Roe were currently enrolled in any University courses (*i.e.* they were on Summer Break). So there was no connection with any University program or activity which could give rise to jurisdiction under Title IX or the Policy.

48. The Policy expressly provides that jurisdiction only exists where: a) the alleged incident occurred on Campus or in a University program or activity; and b) under certain egregious and highly dangerous situations. No such extreme circumstances existed regarding the alleged incident between Doe and Roe, thereby establishing that the University had no jurisdiction over the Complaint pursuant to Title IX or the Policy.

49. The Policy is Unconstitutional both facially and as applied based upon its direct contravention of Doe's rights and the rights of other University students under the Due Process Clause of the 14th Amendment to the U.S. Constitution.

50. Regulations adopted by the United States Department of Education ("DOE") approximately 19 years ago, which purport to implement the provisions of Title IX, still remain

on the books today. But the DOE proposed broad amendments to those Regulations in 2018 which expressly insured that an accused was guaranteed the right to be represented by legal counsel, confront his or her accuser, and have an evidentiary hearing conducted. The DOE concluded that the prior Regulations fundamentally denied an accused the Right to Notice and a Hearing, which constitute fundamental Constitutional Due Process rights. Those Regulations have not yet been formally adopted by the DOE.

51. The DOE also issued an advisory letter in or about 2011 (the "Advisory Letter") to educational institutions subject to Title IX regarding suggested components of sexual misconduct policies. It is believed and therefore averred that the Advisory Letter was the basis for the University's adoption of the Policy provisions that deny the right to representation by legal counsel, establish the standard of proof as a preponderance of the evidence, deny the accused a hearing, and prohibit the ability to confront the accuser.

52. The Advisory Letter was revoked in writing by the DOE in 2018 (the "Revocation Letter"). The Revocation Letter specifically noted, *inter alia*, that Title IX jurisdiction was narrow, limited only to incidents that occur in University programs and activities.

53. The Policy was not amended to comport with the Revocation Letter. Denial of fundamental Constitutional Due Process rights remained in the Policy. And no jurisdictional provision strictly limiting the Policy's reach to University activities and programs was added.

54. The Policy was without any legitimate legal basis for its provisions that deny fundamental Constitutional rights. As soon as the DOE revoked the Advisory Letter, the University and Board should have amended the Policy so as to insure that Doe was accorded his Constitutional rights, but they failed to do so.

55. Fundamental principles of Due Process under the United States Constitution require

University disciplinary proceedings to include: a) a hearing in cases where sanctions as serious as suspension may result; and b) an opportunity to cross-examine the accuser. The Policy, both facially and as applied to Doe, directly violates such Constitutional rights.

56. In addition, the University violates Title IX when it reaches an erroneous outcome in a student's disciplinary proceeding because of the student's sex. Here, the University did not provide Doe with a hearing or an opportunity to cross-examine Roe. It is believed and therefore averred that the Policy so provides to protect and punish based on gender and sex grounds, to-wit: the predominant sex of complainants is female and the predominant sex of respondents is male.

57. In addition, the University regularly takes cognizance over sexual assault complaints that it has no jurisdiction over out of fear of Federal funding recriminations and based upon sex discrimination. Complaints are processed despite a lack of jurisdiction where there are female accusers and alleged male perpetrators based upon discriminatory presumption that male students are the Responsible person.

## COUNT I – VIOLATIONS OF TITLE IX

58. The contents of paragraph 1. through 57. are hereby restated as if fully set forth herein.

59. Title IX only vests the University with jurisdiction over alleged incidents that occur in its program and activities. Despite that fact, the University subjected Doe to its Title IX process regarding the Complaint, which had no nexus with any University programs or activities.

60. Nor was jurisdiction over the Complaint present under the Policy. But the University still took cognizance over the Complaint.

61. In so doing, the Defendants exceeded their legal authority and violated Doe's rights under Title IX. Doe was discriminated against based upon his sex, due to sex-based presumptions

and actions of the University.

62. In addition, the University imposed a sanction which was not logically or legally permitted, in violation of Title IX. The sanction was also excessive, another violation of Title IX.

63. The Defendants' violations of Title IX also constitute a separate, independent violation of 42 U.S.C. § 1983. 20 U.S.C. § 1681 is a law of the United States, the violation of which is subject to redress under § 1983. The Board and Myers are liable under § 1983 in their respective supervisory and agency capacities based upon their promulgation and implementation of the Policy and treatment of Doe.

64. As a direct and proximate result of the Defendants' violations of Title IX and § 1983, Doe has been caused to suffer damages in an amount to be determined at trial.

## COUNT II – VIOLATION OF CIVIL RIGHTS - § 1983

65. The contents of paragraph 1. through 64. are hereby restated as if fully set forth herein.

66. The fundamental requirements of Constitutional Due Process which Doe is entitled to under the 14th Amendment to the United States Constitution mandates that he be provided with notice and an opportunity to be heard. Doe's Due Process Rights were grossly violated by the Defendants under the circumstances. The Defendants acted under color of State law when committing the said violations, to-wit: the University qualifies as a State agency for U.S. Constitutional rights purposes and the Board and Myers are responsible in their respective supervisory and agency capacities.

67. In addition, Doe's Due Process Rights were violated since the Defendants did not: a) provide Doe with a copy of the Complaint; b) give Doe Notice of the essential allegations of the Complaint; c) provide Doe with a Hearing; d) allow Doe to be fully represented by legal counsel;

and e) permit Doe to confront Roe via a cross-examination questioning. Constitutional violations on the face of the Policy also violated Doe's Due Process Rights.

68. Principles of substantive Due Process in the context of school discipline establish that a Constitutional violation occurs where there is no rational relationship between the punishment and the offense. Here, the University and Board imposed the unavailable and illogical sanction of suspension of Doe despite the fact that he was no longer enrolled as a student and had already earned his Diploma, Degree, and Transcript. The Illegal Suspension also constitutes an unreasonable action in disregard of the facts and circumstances of the case, to-wit: suspending a non-student and denying him his Diploma, Degree, and Transcript despite the fact that he had already earned them and was no longer subject to such sanctions.

69. The Defendants also subjected Doe to the Policy where no jurisdiction existed under Title IX or the terms of the Policy and penalized Doe in excess of the Sanctions and in a manner that was excessive and arbitrary.

70. Finally, the University violated Does' Due Process Rights by failing to confer his Bachelor's Degree and provide him with a Diploma and a clean Transcript.

71. Both Doe's substantive and procedural Due Process Rights were contravened. The circumstances shock the conscience; it is utterly illogical to purport to suspend a non-student and deny issuance of the Bachelor's Degree and Diploma after Doe legally earned them.

72. As a direct and proximate result of the Defendants' violations of § 1983, Doe has been caused to suffer damages in an amount to be determined at trial.

### COUNT III – DECLARATORY JUDGMENT

73. The contents of paragraph 1. through 72. are hereby restated as if fully set forth herein.

74. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with authority to declare the rights and other legal relations between parties.

75. The Court should declare that: a) the University and Board have breached the Enrollment Contract; and b) Doe is entitled to have his Bachelor's Degree conferred, receive his Diploma, and have the Illegal Suspension notation removed from his Transcript based upon Title IX, Doe's Federal Constitutional Rights, § 1983, and the Enrollment Contract.

76. The Court should also enter a Declaratory Judgment holding that: a) the University and Board must issue Doe his Bachelor's Degree, Diploma, and clear Transcript as a matter of law; and b) the finding of Responsible against Doe is invalid due to lack of jurisdiction and Constitutional violations.

## COUNT IV – BREACH OF CONTRACT

77. The contents of paragraph 1. through 77. are hereby restated as if fully set forth herein.

78. Pursuant to their violations of Title IX, Federal Constitutional Rights, § 1983 and the Enrollment Contract, the University and Board have breached the Enrollment Contract.

79. In addition, the University and Board have breached the Enrollment Contract by failing to bestow the Diploma, Degree, and Transcript upon Doe despite the fact that he has complied with all requirements necessary of his course of study in order to entitle him to receive the Diploma, Degree, and Transcript.

80. The University and Board also breached the Enrollment Contract by violating the Policy *vis-à-vis* jurisdiction over sexual assault claims; the Enrollment Contract expressly or impliedly requires that the University abide by the Policy as adopted, but in this instance they failed to abide by the jurisdictional limitations of the Policy by taking cognizance over Roe's

complaint against Doe despite the fact that there was no jurisdiction under the circumstances.

81. As a direct and proximate result of the University and Board's breaches of contract under the Enrollment Contract, Doe has been caused to suffer damages in the form of loss of his June 2013 Commissioning as a 2nd Lieutenant in the United States Military pursuant to the ROTC Program, loss of income from the United States Military, potential disenrollment from the ROTC Program, and any concomitant obligation to repay monies paid to Doe while enrolled in the ROTC Program.

## COUNT V – PROMISSORY ESTOPPEL

82. The contents of paragraph 1. through 81. are hereby restated as if fully set forth herein.

83. The University and Board promised to provide Doe with a Bachelor's Degree, Diploma, and untarnished Transcript once he completed all requirements for receiving them. The University and Board should have reasonably expected that their promise to Doe would cause him to complete all requirements over a period of years and at considerable cost.

84. Doe completed all such requirements and participated in the Graduation ceremony in direct and reasonable reliance on such promises. But the University and Board breached their promises, causing numerous financial and personal detriments to Doe.

85. The promises made by the University and Board to Doe should be enforced to prevent an injustice to Doe, to-wit: denial of his Diploma, Degree, and Transcript upon completion of all requirements to receive them, and the resulting damages arising from the inability to proceed with his military career pursuant to the ROTC Program.

86. As a direct and proximate result of the breach of promises, Doe has been caused to suffer damages in the form of the inability to pursue his chosen career in the United States Military,

any debt for ROTC payments made to him, and other damages to be determined at trial.

## COUNT VI – BREACH OF IMPLIED COVENANT OF GOOD FAITH &FAIR DEALING

87. The contents of paragraph 1. through 86. are hereby restated as if fully set forth herein.

88. In Delaware, there is an Implied Covenant of Good Faith and Fair Dealing (the "Implied Covenant") imputed into every contract, which includes the Enrollment Contract.

89. To the extent that the Court finds that no express contractual term under the Enrollment Contract was breached, it should conclude that the Implied Covenant was breached by the University and Board.

90. Doe was led to reasonably believe that if he completed his course of study and all other requirements of his Bachelor's Degree program, then the University and Board would issue him his Bachelor's Degree, Diploma and Transcript. He was also led to reasonably believe that the University and Board would not attempt to retroactively take such entitlements away from him after they were earned.

91. As a direct and proximate result of the breach of the Implied Covenant by the University and Board, Doe has been caused to suffer damages in the form of inability to pursue his chosen career in the United States Military, any debt for ROTC payments made to him, and other damages to be determined at trial.

## COUNT VII – SPECIFIC PERFORMANCE

92. The contents of paragraph 1. through 91. are hereby restated as if fully set forth herein.

93. The Enrollment Contract and the concomitant right to receive a Bachelor's Degree, Diploma, and Transcript are unique property rights.

94. The denial of such unique property rights cannot be fully remedied by an award of money damages.

95. The Defendants have failed to perform under the Enrollment Contract by providing Doe with the Bachelor's Degree, Diploma, and Transcript he is entitled to.

96. The Court should enter an Order of Specific Performance requiring the University and Board to issue the Bachelor's Degree, Diploma, and untarnished Transcript to Doe.

WHEREFORE, Doe respectfully requests that this Court: 1) enter Judgment in his favor and against the Defendants on all Counts of this Complaint, including legal, equitable, and damages relief; 2) award him his attorneys fees, litigation expenses, and all court costs; 3) award him pre-judgment and post-judgment interest; and 4) grant him such other and further relief as the Court deems just and proper.

ABBOTT LAW FIRM

*/s/ Richard L. Abbott*

Richard L. Abbott, Esquire (#2712)
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
(302) 489-2529

Attorneys for Plaintiff

Dated: October 16, 2019