IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN DOE,                                    )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )     C.A. No. 1:19-cv-1963-MN
                                             )
UNIVERSITY OF DELAWARE, BOARD )
OF TRUSTEES OF THE UNIVERSITY OF)
DELAWARE, and DANICA MYERS,                  )
                                             )
          Defendants.                        )

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
## TO MOTION TO DISMISS

Richard L. Abbott, Esquire (#2712)
ABBOTT LAW FIRM
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
(302) 489-2529
E-Mail: rich@richabbottlawfirm.com

Attorneys for Plaintiff

Dated:   November 27, 2019

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

    A.    Doe Completes His Course Of Study, Unconditionally Earns
          His Degree & Graduates By June 1, 2019 ................................................... 2

    B.    Doe Is Subjected To An Unconstitutional & Legally Infirm
          Disciplinary Process By The Defendants ..................................................... 2

    C.    Doe Is Excessively & Illegally Sanctioned By The
          Defendants; They Arbitrarily Purport To Take His Vested
          Property Rights Away ................................................................................... 3

    D.    The Defendants Have Breached Doe's Enrollment Contract,
          Taken Valuable Property Rights, Exceeded Their
          Jurisdiction & Violated Doe's Constitutional Rights ................................. 5

ARGUMENT ....................................................................................................................... 7

    I.    RULE 10(a) WILL BE COMPLIED WITH ................................................. 7

    II.    DOE'S CLAIMS PASS MUSTER UNDER RULE 12(b)(6)
        OR AMENDMENT SHOULD BE ALLOWED ......................................... 7

        A.    Standard Of Review Under F.R.C.P. Rule 12(b)(6) ......................... 7

        B.    Sufficient Title IX Violation Allegations Are
            Contained In The Complaint ............................................................. 7

        C.    Doe Pled Constitutional Due Process Violations ........................... 11

        D.    No Jurisdiction Existed Over Doe Under The Policy ..................... 13

        E.    The Individual Defendants Are Not Entitled To
            Qualified Immunity ......................................................................... 16

        F.    The Contract And *Quasi*-Contract Claims Are Not
            Founded Upon A "Catalog" Or The Student Guide to
            University Policies ........................................................................... 17

        G.    The Complaint Well Pleads Facts Sufficient To
            Assert Claims Against The Board ................................................... 19

i

      H.     An Opportunity To Amend Should Be Permitted, If
              Necessary ..................................................................................... 19

CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

Page

Cases

*Apau v. Printpack Inc.*,
  722 F.Supp. 2d 489 (D. Del. 2010)...........................................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................7

*Collick v. William Paterson University*,
  2016 WL 6824374, McNulty, D.J. (D.N.J., Nov. 17, 2016) ......................................13

*Doe v. Alger*,
  175 F. Supp. 3d 646 (W.D. Va. 2016).......................................................................12

*Doe v. Baum*,
  903 F.3d 575 (6th Cir. 2018) ...................................................................................9

*Doe v. Delie*,
  257 F.3d 309 (3rd Cir. 2001) ...................................................................................7

*Doe v. Pennsylvania State University*,
  276 F.Supp. 3d 300 (M.D. Pa. 2017).......................................................................11

*Doe v. Pennsylvania State University*,
  336 F.Supp 3d 441 (M.D. Pa. 2018).........................................................................11

*Doe v. Purdue University*,
  928 F.3d 652 (7th Cir. 2019) ............................................................................11, 12

*Doe v. Rector & Visitors of George Mason University*,
  149 F. Supp. 3d 602, 622 (E.D. Va. 2016) ...............................................................12

*Doe v. Rector and Visitors of University of Virginia*,
  2019 WL 2718496, Conrad,
  D.J. (W.D. Va., June 28, 2019)................................................................................12

*Johnson v. Rooney*,
  2011 WL 2178693, Scott, J. (Del. Super. 2011)........................................................18

*Nicholas v. Pennsylvania State University*,
  227 F.3d 133 (3rd Cir. 2000) ...................................................................................13

*Yeasin v. University of Kansas*,
  360 P.3d 423 (Kan. App. 2015) ................................................................................9

iii

<u>Statutes</u>

20 U.S.C. § 1681, Title IX ........................................................................................ *passim*

42 U.S.C. § 1983 .......................................................................................................... 1

<u>Rules</u>

Fed. R. Civ. Pro. 12(d) ............................................................................................... 7

Fed. R. Civ. Pro. 15 .................................................................................................. 19

## NATURE AND STAGE OF THE PROCEEDINGS

This action was initiated pursuant to the filing of a Complaint on October 16, 2019. The Complaint contains 7 Counts: 1) Violations of Title IX, 20 U.S.C. § 1681; 2) Violations of Civil Rights, in contravention of 42 U.S.C. § 1983 based upon Statutory and Constitutional violations; 3) Declaratory Judgment and Specific Performance claims seeking conferral of a Bachelor's Degree, Diploma, and unvarnished Transcript and invalidating the Student Disciplinary outcome and/or Sanction; 4) Breach of Contract and alternative claims for Promissory Estoppel, and Breach of the Implied Covenant of Good Faith and Fair Dealing, based upon failure to confer Degree, Diploma, and Transcript.

In Defendant's Opening Brief in support of their Motion to Dismiss dated November 9, 2019 ("OB" or "Opening Brief"), the Defendants chose to misuse this section of the brief in contravention of Rule 7.1.3(c)(C). Defendants included an unsupported allegation that Plaintiff John Doe ("Doe") "was charged with having committed a serious sexual assault against another University student." OB at 1. All sexual assault allegations are "serious," but there is nothing contained in the Complaint that would support that proposition. Indeed, the Complaint expressly pleads that the level of severity of the offense was "moderate" at best.

Next, the Defendants misstate the basis for Doe bringing this action, attempting to transmogrify his well-pled grounds for seeking relief into an attempt to not "accept responsibility." OB at 1. The Defendants cast aspersions upon Doe for pursuing legal redress, which is not appropriate anywhere in a brief.

STATEMENT OF FACTS

Due to brief length limitations, additional facts are referenced and cited in the Argument section.  The facts below are based on the Complaint.

A.    Doe Completes His Course Of Study, Unconditionally Earns His Degree & Graduates By June 1, 2019

Doe was enrolled in a Bachelor's Degree program at the University of Delaware from Fall Semester 2016 through the end of Spring Semester 2019.  Complaint at para. 8. He successfully and unconditionally completed all requirements needed to obtain his Bachelor's Degree by late May of 2019.  Complaint at paras. 9. and 11.  Doe participated in the formal graduation ceremonies conducted by the University on June 1, 2019. Complaint at para. 10.

B.    Doe Is Subjected To An Unconstitutional & Legally Infirm Disciplinary Process By The Defendants

In mid-December of 2018, Doe was informed in writing by the University (the "University Notice Letter") that a complaint ("complaint") had been initiated against him by a female student ("Roe").  Complaint at para. 16.  Roe alleged that Doe had committed a violation of the University's Sexual Misconduct Policy (the "Policy").  Complaint at para. 17.  The University Notice Letter, however, only notified Doe that Roe alleged a "sexual assault" and nothing more.  Complaint at para. 18.

The Board is aware of, and has expressly and/or tacitly approved, the Policy, Title IX, and the limits of jurisdiction under both.  Complaint at para. 19.  And the Board is aware of, and has expressly and/or tacitly approved, Myers' role under the Policy and Title IX.  *Id.*  The Policy was adopted by the University and the Board in order to carry out their legal obligations under Federal law, namely 20 U.S.C. § 1681 *et seq.*, which prohibits sexual discrimination by educational institutions ("Title IX").  Complaint at para. 20.

2

The Policy concedes that its jurisdiction is limited to the bounds of Title IX and that its procedures are provided for in order to comply with Title IX. Complaint at para. 21. But the incident upon which the complaint was based had no nexus with any University program or activity; the complaint should never have been pursued based upon lack of jurisdiction. *Id.*

The University did not provide Doe with a copy of the Complaint, as required by the Policy. Complaint at para. 22. Nor did the University provide Doe with notice of even a summary of the allegations contained in the Complaint. Complaint at para. 23. He was not advised of Roe's story until after it was too late: when he was put on the spot by the Investigator at the interview she conducted.[1] Complaint at para 25.

Consistent with the Policy, Doe was denied the ability to: a) be fully represented by legal counsel; b) receive a hearing; c) receive notice of the predicate acts forming the basis for the charge(s) alleged; d) be advised of the allegations brought by Roe at the earliest opportunity in the proceedings, in order to fully and fairly prepare a defense; and e) cross-examine and confront his accuser. Complaint at para. 26. Instead, Roe was shielded, hidden from view, not subjected to adverse questioning, and permitted to avoid the normal procedures that are necessary in order to accord an accused the full panoply of Constitutional Due Process rights. *Id.*

C.    Doe Is Excessively & Illegally Sanctioned By The Defendants; They Arbitrarily Purport To Take His Vested Property Rights Away

Pursuant to the University Of Delaware Student Code Of Conduct ("Code of Conduct"), the Policy governs alleged sexual assaults. Complaint at 27. But a student

---

[1] The Investigator was a female attorney retained by the University.

found to be "Responsible" under the Policy is sanctioned under the Code Of Conduct (the "Sanctions"). Complaint at para. 28.

Sanctions range from the least serious to the most serious forms of punishment as follows: Warning, Reprimand, Probation, Deferred Suspension, Suspension, Expulsion. Complaint at para. 29. In the case of a Suspension or Expulsion, a student may be prevented from completing an ongoing semester of study. *Id.*

Sanctions do not include erasing already completed semesters of study or any vested rights attendant thereto. Complaint at 31. Nowhere do the Sanctions allow for suspension of an already earned Bachelor's Degree, Diploma, and official Student Transcript ("Transcript"). *Id.*

Doe participated in the process prescribed by the Policy. Complaint at para. 32. He was ultimately found Responsible, sanctioned, and his appeal was denied (the "Finding & Sanction"). But the Finding & Sanction did not occur until Doe had earned his Bachelor's Degree, graduated from the University, and ended his enrollment as a student at the University. *Id.*

The University imposed a suspension on Doe for 2 years (the "Illegal Suspension"), even though he was no longer a student and despite the fact that he had completed his Bachelor's Degree. Complaint at para. 34. The Sanctions do not authorize the imposition of a retrospective Suspension of a former student. *Id.* The University also sanctioned Doe via the listing of the Illegal Suspension on his Transcript (the "Transcript Note"). Complaint at para. 35.

The University has refused and declined to: 1) confer the Bachelor's Degree and Diploma which Doe is entitled to; 2) provide Doe with his Transcript, either with or

without the Transcript Note on it; and 3) confirm to the ROTC Program that Doe successfully completed his Bachelor's Degree and received his Diploma.  Complaint at para. 36.

Doe had no disciplinary record during the time that he was enrolled at the University and completed all requirements to be conferred his Bachelor's Degree. Complaint at para. 38.  The alleged conduct which Doe was found Responsible for is at most in the modest range in terms of degree of severity.  *Id.*

The University unreasonably and arbitrarily imposed a suspension sanction that far exceeds what the circumstances and Doe's pristine record justified.  Complaint at para. 39. The University's sanctions were excessive and unreasonable, constitute an erroneous outcome, and are sex-based discrimination in violation of Title IX.  *Id.*

D.     The Defendants Have Breached Doe's Enrollment Contract, Taken Valuable Property Rights, Exceeded Their Jurisdiction & Violated Doe's Constitutional Rights

Doe's tenure at the University was based upon an enrollment agreement (the "Enrollment Contract").  Complaint at para. 43.  If Doe complied with all Bachelor's Degree requirements and paid all sums due, then the University would issue his Bachelor's Degree.  *Id.*  Doe paid all amounts due and completed all requirements.  Complaint at para. 44.

The alleged incident which formed the basis for the complaint involved an encounter between Doe and Roe at Roe's apartment located on private property off of the University's campus between June 30, 2018 and July 1, 2018.  Complaint at para. 47.  At that time, the University was out of session and neither Doe nor Roe were currently enrolled in any University courses (*i.e.* they were on Summer Break).  *Id.*

5

The Policy provides that jurisdiction only exists where: a) the alleged incident occurred on Campus or in a University program or activity; and b) under 3 other egregious or highly dangerous situations.  Complaint at para. 48.  No such extreme circumstances existed regarding the alleged incident between Doe and Roe.  *Id.*

ARGUMENT

I.      RULE 10(a) WILL BE COMPLIED WITH

Doe will be filing a Motion for permission to proceed under a pseudonym.  Counsel

for the Defendants has indicated that such Motion is not opposed.

II.     DOE'S CLAIMS PASS MUSTER UNDER RULE 12(b)(6)
        OR AMENDMENT SHOULD BE ALLOWED

        A.      Standard Of Review Under F.R.C.P. Rule 12(b)(6)

In considering a Rule 12(b)(6) Motion to Dismiss, the Court "must accept as true

all of the factual allegations in the complaint as well as the reasonable inferences that can

be drawn from them." *Doe v. Delie*, 257 F.3d 309, 313 (3rd Cir. 2001).  Dismissal is only

appropriate "if it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *Id.*  Factual allegations of the Complaint need only

rise to the level "above the speculative"; "a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations... ." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).

Generally, a Motion to Dismiss must be converted to a Motion for Summary

Judgment pursuant to Fed. R. Civ. Pro. Rule 12(d) "if matters outside the pleadings are

presented and not excluded." *Apau v. Printpack Inc.*, 722 F.Supp. 2d 489, 492 (D. Del.

2010).  An exception to the Rule exists for undisputedly authentic documents attached as

an exhibit to a Motion to Dismiss, if a plaintiff's claim is based on that document.  *Id.*

        B.      Sufficient Title IX Violation Allegations Are
                Contained In The Complaint

For starters, the Opening Brief completely ignores the Title IX claim based upon

lack of jurisdiction.  Looking to the text of the relevant statute, 20 U.S.C. § 1681, it is both

pled and clear under the law that Title IX proceedings may only be brought when there is

a connection with university programs or activities. The Complaint pleads that there is no such connection, as the incident occurred outside the school year and off campus, thereby sufficiently alleging a violation of Title IX. Because the Defendants do not seek dismissal of that component of Count I of the Complaint, it survives the Motion.

Next, the Defendants focus on the Erroneous Outcome component of Doe's Title IX claim, alleging that it is not sufficiently pled. At the outset, it should be noted that it is not easy to compile specific evidence of gender bias in a sexual misconduct system at the University since such proceedings are confidential. All a plaintiff can do is assert that: 1) the illegal conduct he was subjected to was obviously based on a reason other than the merits; and 2) certain information that is publicly available and anecdotal evidence establishes a pattern of discrimination against male students and taking *supra*-legal steps to favor female complainants.[2] An inference of gender bias can be drawn from such non-speculative allegations.

The Complaint pleads the failure of the Defendants to: 1) provide Doe with a copy of the complaint as required by the University's Sexual Misconduct Policy ("Policy"); 2) provide any description of the factual grounds for (conclusorily) alleging "sexual assault" in the University's Notice Letter; 3) give Doe even a summary of the allegations contained in the complaint at an appropriate stage in the process; 4) allow Doe to confront his accuser at a disciplinary hearing; 5) limit any Sanctions imposed against Doe to those permitted by the Code of Conduct; and 6) issue Doe his Bachelor's Degree, Diploma, and clean Transcript as he was legally entitled to. Complaint at paras. 16.-36. In addition, the

---

[2] Exhibit A hereto is the only public disclosure that could be found of similar University illegalities. The University attempts to hide the gender of some complainants and respondents via use of the gender neutral pronoun "they." But many reported incidents include gender identifying pronouns.

Complaint alleges that the Policy fails to comport with Constitutional requirements since: 1) the Policy and practices of Defendants overly protect the predominantly female complainants and punish the predominantly male respondents; 2) the University regularly takes jurisdiction over sexual assault complaints that are not within the jurisdiction of Title IX or the Policy; 3) the University discriminates against accused males and unduly favors predominantly female complainants "out of fear of Federal funding recriminations and based upon sex discrimination."; and 4) the University regularly and improperly exercises jurisdiction where there are female accusers and alleged male perpetrators "based upon discriminatory presumption that male students are the responsible person." Complaint at paras. 56. and 57.

It has been held that a State university's exercise of Title IX jurisdiction over a student regarding conduct that did not occur on campus or at a university event was an impermissible exercise of jurisdiction; the student Code of Conduct only applied to conduct on campus or at a university sponsored activity. *Yeasin v. University of Kansas*, 360 P.3d 423, 954-55 (Kan. App. 2015). In the case at bar, the Complaint adequately alleges that the Defendants exceeded the jurisdiction provided in Title IX and the Policy, thereby rendering the entire process against Doe invalid. That more than adequately states a claim under both Title IX and the Due Process Clause.

It has also been held that a male student at the University of Michigan adequately pled a Title IX claim by alleging "that the university did not provide an opportunity for cross-examination even though credibility was at stake in his case... ." *Doe v. Baum*, 903 F.3d 575, 585-86 (6th Cir. 2018). The Complaint similarly alleges. And the Complaint goes on to allege that the reason for the Policy's failure to provide such a Constitutionally

required Due Process Right to Doe is based upon gender-based discrimination, which attempts to coddle and shield female accusers in a biased fashion. As a result, a Title IX claim is well-pled.

Reasonable inferences can be drawn from the allegations contained in the Complaint that the University is conducting its proceedings against Doe and other male students in a fashion that is founded upon gender discrimination. The University is scared to death of losing Federal funding, which is a possible outcome if the United States Department of Education concludes that it is not enforcing Title IX. And the University overreacts to the point of accepting jurisdiction over matters that fall well outside of the bounds of Title IX and the Policy. The University intentionally violated Doe's Due Process Rights, took cognizance of a complaint it had no jurisdiction over, and imposed an illogical and illegal sanction. This establishes that there was only a non-meritorious basis for the University's actions *vis-à-vis* Doe. Tacking on the allegations that the University has gender-slanted procedures and makes presumptions regarding the Responsible nature of male respondents, the Complaint pleads all that is needed to validly assert an Erroneous Outcome claim under Title IX.

The Code of Conduct and the Policy make it clear that no one other than a few University personnel can ever see the files in these types of matters, thereby rendering it impossible for someone to have the necessary specific details that the Defendants assert are necessary to sufficiently plead a claim under Title IX. That is why the all-important reasonable inferences, which the applicable legal standard requires the Court to draw in favor of Doe, kick in to insure that allegations such as those contained in the Complaint

are sufficient to withstand a Motion to Dismiss. Doe has satisfied the minimal notice pleading standard. The Motion should be denied.

### C.    Doe Pled Constitutional Due Process Violations

Under nearly identical circumstances, a sister District Court has held that the disciplinary procedure employed by a State-supported university raised Due Process Constitutional concerns sufficient to deny the university's motion to dismiss. *Doe v. Pennsylvania State University*, 336 F.Supp 3d 441, 450-51 (M.D. Pa. 2018). In that action, a student found to have committed a sexual assault received a sanction of suspension for 1 year. The process employed was investigation (no hearing), no cross-examination of accuser, etc., identical to the facts pled by Doe in the Complaint. Similarly, this Court should deny the Defendants' Motion to Dismiss since a Constitutional Due Process claim has been well-pled.

Echoing that decision's rationale - that the investigative model does not pass muster under Due Process analysis where suspension is a potential sanction and the determination of the allegation is credibility-based - is *Doe v. Pennsylvania State University*, 276 F.Supp. 3d 300, 308-311 (M.D. Pa. 2017). Similarly, the 7th Circuit has held that a complaint that alleges a university took established property rights, including the right to not be suspended without good cause, supports a Due Process claim. *Doe v. Purdue University*, 928 F.3d 652, 660 (7th Cir. 2019). Here, Doe has adequately pled that he has a right to his Bachelor's Degree, Diploma, and Transcript based upon his performance of all requirements to obtain the conferral thereof, including payment of all amounts due to the University and completion of all course work before any Sanction was imposed upon him.[3]

---

[3] The Complaint also points out how the 11+ month delay from the date of the incident to the final decision against Doe was caused solely by foot dragging on the part of the Complainant and the

And perhaps more notably, the 7th Circuit held that the student adequately pled deprivation of a protected liberty interest for purposes of triggering the applicability of Due Process protections based upon his allegation that he was denied the freedom to pursue service in the United States Military, just as Doe's Complaint does. *Doe v. Purdue University* at 661-663. The Complaint alleges that Doe was not afforded: 1) a copy of the complaint as required by the Policy; 2) advance notice of any of the allegations contained in the complaint, or a summary thereof; 3) the ability to cross-examine and thereby challenge the credibility of the complainant; and 4) the right to only be subject to a sanction permitted by the Policy and the Code of Conduct. These fundamental violations of Doe's Due Process Rights are more than sufficient to withstand Rule 12(b)(6) scrutiny and therefore the Motion to Dismiss should be denied.

Further, it has been held that the suspension of a student clearly implicates a protected property interest and that allegations of sexual assault may impugn a student's reputation and integrity so as to implicate a protected liberty interest. *Doe v. Rector and Visitors of University of Virginia*, 2019 WL 2718496, *5, Conrad, D.J. (W.D. Va., June 28, 2019), citing *Doe v. Alger*, 175 F. Supp. 3d 646, 657-58 (W.D. Va. 2016) and *Doe v. Rector & Visitors of George Mason University*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016). In holding that there was a likelihood of success on the merits of the Due Process claims, the Court relied upon the fact that the student "had completed the requirements for his undergraduate degree and was no longer enrolled in classes at the University." *Id*. at *6. The Court also found it significant that the alleged incident occurred off campus on private

---

University (not due to Doe). And the Complaint pleads that the University was fully aware that Doe was about to graduate but took 6 months to adjudicate the complaint against Doe, resulting in a University self-inflicted harm that it cannot now be heard to complain of.

property.  Both of those facts are present in this action.  Ultimately, the Court held that because the process provided by the University of Virginia did not allow the student to contest jurisdiction, a colorable claim for violation of Constitutional Due Process Rights had been alleged.  The jurisdiction-based nature of Doe's claim in this action therefore adequately pleads a Due Process violation.

As for substantive Due Process, the 3rd Circuit has held that a person is protected from arbitrary or irrational deprivation of rights deemed "fundamental" under the Constitution. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 142 (3rd Cir. 2000). And in applying that standard, another District Court has held that liberty interests that are alleged to have been violated sufficiently satisfy the "fundamental" right standard of *Nicholas*. *Collick v. William Paterson University*, 2016 WL 6824374, *17, McNulty, D.J. (D.N.J., Nov. 17, 2016).  The Complaint pleads violations of Constitutionally protected liberty interests in serving in the United States Military, not being subjected to unavailable Sanctions, and harm to Doe's reputation.  So the Complaint alleges an arbitrary and irrational deprivation of Doe's fundamental Constitutional rights.

D.    No Jurisdiction Existed Over Doe Under The Policy

The Defendants concede that the Policy expressly limits its jurisdictional breadth to sexual assault committed by a student off University property in only 4 specific circumstances: 1) a connection with a University recognized program or activity; 2) conduct allegedly creating a hostile environment for a member of the University community; 3) conduct disruptive to the normal functions and processes of the University; and egregiously offensive to the University's Mission; and 4) conduct which renders a respondent's continued presence on campus a serious threat to persons or property.  OB at 8.

13

*First,* the Defendants concede that factor 1 is not present (apparently due to the off-campus, Summer occurrence having no connection with any University program or activity). *Second*, no allegation in the Complaint supports a finding of a "hostile environment" to any University community member caused by the alleged incident. *Third*, the alleged conduct did not disrupt any University functions or processes since it did not occur on campus or in any University program or activity, or in any way interfere with the day-to-day operations of the University. In addition, there is no chance of an egregious offense to the University's Mission since the Mission is solely focused on academics, which were not disturbed by the off campus, non-school year occurrence. *See* Exhibit B attached (University Mission Statement). *Fourth*, Doe's continued presence on campus obviously did not pose a serious threat to any persons or property since the Defendants did not issue an Interim Suspension that would have prohibited him from completing all of his course work and requirements to obtain his Degree effective May of 2019 (despite the University's receiving the complaint 2 months before the Spring semester commenced).[4] *See* Policy at § VII.B.

The extreme circumstances necessary to satisfy Policy jurisdictional grounds 2, 3, and 4 – "hostile environment," "egregiously offensive," and "serious threat" – simply are not present under the facts extant. Consequently, the Defendants' argument that jurisdiction existed abysmally fails.

Additionally, the Defendants' citation to fact-finding in decisional law authority is of no moment to the issue at the Motion to Dismiss stage. OB at 8-9. Those findings of

---

[4] An alleged violation of the Policy alone cannot trigger jurisdiction since every case would *ipso facto* be within the Policy's jurisdiction. One can always surmise harms to an alleged victim, but the Policy requires evidentiary proof. The Defendants' reading of the Policy is in error.

fact have no bearing on the pleadings stage record before the Court. Indeed, the Complaint alleges that at most there was a moderate level incident and that Doe completed all of his course work successfully. Therefore, the Court may infer that all was well and there were no problems with Doe's continued presence on campus, rendering it impossible for the University to establish the extreme types of circumstances necessary for it to exercise jurisdiction under the Policy. Actions speak louder than words. The University obviously did not believe that any extreme circumstances existed or else it would have: 1) imposed an Interim Suspension of Doe; and 2) moved with great dispatch in adjudicating the complaint. No evidence of any "hostile environment," "egregiously offensive" circumstance, or "serious threat" is before the Court at this stage.

Lastly, the Defendants desperately cling to an overly broad Sanctions provision for the theory that they have unbridled discretion to impose any sanction they wish. OB at 10-11. Obviously, that argument offends fundamental principles of Due Process. Even if the Sanctions provision cited – § A.3. - permitted the suspension of a non-student or denial of vested rights to a Degree, Diploma, and Transcript (which it does not), the argument should be rejected as a *post hoc* rationalization. The Sanctions provision relied upon to suspend Doe is contained in section A.2.j.: entitled "Suspension and Ban from the University." But it could not be applied by its own terms since Doe was no longer a "student," taking "classes," or "participating in University activities." And § A.2.j. does not provide that its imposition allows the University to deny a former student the Bachelor's Degree, Diploma, and Transcript he has earned.

Taken to its logical conclusion, the Defendants' unbridled discretion argument would mean that the University could sanction a student by permanently erasing his entire

15

academic accomplishments at the University and forever refuse to issue a Bachelor's Degree, Diploma, and Transcript that the student had paid for and earned in full. The University's position is arbitrary and irrational. The University's illogical theory that it may issue a Suspension *nunc pro tunc* after the University dragged its feet for 6 months in undertaking a process that could and should have been completed in 60 days should be rejected by the Court. A claim is well-pled for impermissible sanction, the Defendants' dislogical protestations to the contrary notwithstanding.

        E.     The Individual Defendants Are Not Entitled To Qualified Immunity

The individual Defendants allege that they were blissfully ignorant of the fact that they were violating Title IX and Doe's Due Process Rights, breaching the Enrollment Contract, and breaking promises to Doe. OB at 14-15. More specifically, the individual Defendants allege that their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." OB at 14. Title IX is certainly well-known to the individual Defendants. And so is the United States Constitutional provision guaranteeing a student Due Process of law. Accordingly, the individual Defendants' argument fails.

Decisional law authority cited herein establishes the limited jurisdiction of Title IX and the Due Process rights of cross-examination of the accuser, the exercise of jurisdiction only as set forth in the Policy, and the obligation to abide by the Sanctions provisions. Despite that well-established body of law, the individual Defendants flaunted it by clinging to their Unconstitutional process, exercising *supra*-legal jurisdiction over the complaint. So too did the individual Defendants: 1) allow an illogical and impermissible Sanction – Suspension of a non-student – to be imposed; and 2) deny Doe his vested rights to a Degree,

Diploma, and Transcript. Finally, the individual Defendants violated Doe's substantive Due Process Rights based upon the negative effect on his liberty interest to proceed with his planned induction into the United States Military <u>and</u> acted arbitrarily and irrationally be failing to abide by their legal obligation to confer a Bachelor's Degree, Diploma, and Transcript upon Doe.

The clear-cut violations of Doe's well-established rights forecloses the individual Defendants from establishing Qualified Immunity. Therefore, the Court should deny that component of the Motion to Dismiss.

F.     The Contract And *Quasi*-Contract Claims Are Not
       Founded Upon A "Catalog" Or The Student Guide to
       University Policies

The Defendants argue for dismissal of the Breach of Contract, Promissory Estoppel, Breach of Implied Covenant of Good Faith and Fair Dealing, and Specific Performance claims pursuant to an admittedly "speculative" and flawed premise that those claims are founded upon the Student Guide to University Policies. OB at 17 and Exhibit B. Not so. Consequently, the Defendants' request for dismissal of Counts IV through VII is without merit.[5]

The Complaint alleges that Doe: 1) was enrolled in a Bachelor's Degree program at the University; 2) successfully completed all requirements needed to obtain his Bachelor's Degree by May of 2019, 3) participated in the formal graduation ceremony on June 1, 2019; and 4) unconditionally completed his course of study and ended any

---

[5] The Defendants' request for dismissal of Count III for Declaratory Judgment fails *ipso jure* based upon the preceding Argument sections.

enrollment at the University in May of 2019. [6]  Complaint at paras. 8.-11.  The Complaint also alleges an agreement existed between Doe and the University "that if Doe complied with all Bachelor's Degree requirements and paid all sums due, then the University would issue a Bachelor's Degree to him."  Complaint at para. 43.  Finally, the Complaint alleges that Doe earned his Bachelor's Degree by completing all requirements and paying all amounts due to the University.  Complaint at para. 44.

The Complaint adequately alleges an enforceable contract existed under Delaware law, to-wit: an offer, an acceptance, consideration, and full performance by Doe.  *See Johnson v. Rooney*, 2011 WL 2178693, \*2, Scott, J. (Del. Super. 2011).  The sole performance remaining to be carried out is the University's obligation to issue a Bachelor's Degree, Diploma, and Transcript to Doe.  The claims for Promissory Estoppel and Breach of the Implied Covenant of Good Faith and Fair Dealing are expressly brought in the alternative, in case the Court should conclude that there was no express contract entered into between the parties.

The inferences that may be drawn from the allegations pled abound.  Doe paid and satisfied all requirements to graduate and receive his Degree, Diploma, and Transcript. The University has not performed its part of the bargain, thereby entitling Doe to a Declaratory Judgment and Damages arising from all matters that directly flow from the Defendants' breach.  Those Damages are significant, and they become even more substantial as the Defendants continue to deny their legal obligation to bestow the

---

[6] The "Graduation & Diplomas" printout from the University's website attached as Exhibit C to the Opening Brief cannot be relied upon under the applicable legal standard <u>and</u> it is irrelevant since it post-dates Doe's graduation.

Bachelor's Degree, Diploma, and Transcript upon Doe. As a result, the Defendants' request for dismissal of Counts III through VII should be denied.

> G.  The Complaint Well Pleads Facts Sufficient To Assert Claims Against The Board

Ignoring the provisions of 14 *Del. C.* Ch. 51, which is cited in paragraph 3 of the Complaint, the Board suggests that it should be dismissed based upon supposed failure to allege any claims against it. OB at 19. Both the provisions of Title 14, Chapter 51 of the Delaware Code and the pleading establish that the Board does "possess all legal authority to operate and conduct the business and affairs of the University" and that the Board is the party responsible for all aspects of the University's functions.

Both express allegations of the Complaint and reasonable inferences therefrom establish that the Policy, the gender bias inherent in the process, the improper exercise of jurisdiction, the illegal sanction, and the contract and *quasi*-contract claims for failure to provide Doe with his Bachelor's Degree, Diploma, and Transcript all fall within the duties and responsibilities of the Board. It is alleged that the Board promulgated and acted so as to give rise to all 7 Counts of the Complaint. Thus, the claims against the Board are sufficient to withstand Rule 12(b)(6) review.

> H.  An Opportunity To Amend Should Be Permitted, If Necessary

To the extent the Court concludes there is any deficiency in any claim pled, Doe requests the opportunity to seek amendment of the Complaint pursuant to Fed. R. Civ. Pro. 15 to moot the issue(s).

CONCLUSION

Based upon the foregoing, Doe respectfully requests that the Court deny the Defendants' Motion to Dismiss in its entirety. Federal and State law claims are all well pled so that they withstand the Motion as a matter of law. The requisites needed to establish qualified immunity have not been proven under the applicable legal standard. And any defect in pleading a claim should be subject to a curative amendment to the Complaint. The action should proceed to discovery and adjudication on its merits.

ABBOTT LAW FIRM

Richard L. Abbott, Esquire (#2712)
724 Yorklyn Road, Suite 240
Hockessin, DE 19707
(302) 489-2529
E-Mail: rich@richabbottlawfirm.com

Attorneys for Plaintiff

Dated:  November 27, 2019