**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 19-1963-MN |
| | ) | |
| UNIVERSITY OF DELAWARE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

After receiving a Title IX complaint against Plaintiff, Defendant University of Delaware ("UD") investigated and found him responsible for sexual misconduct. Plaintiff was suspended for two years. He subsequently brought this action to challenge the procedures employed during his disciplinary proceedings and the sanction imposed. He alleges violations of Title IX and his right to due process, and he also raises several contract claims. UD, the sole remaining defendant, agrees that Plaintiff's due process claim may proceed, but UD wants the other claims dismissed. For the reasons stated below, I recommend that UD's motion be GRANTED-IN-PART and DENIED-IN-PART.

**I.     BACKGROUND[1]**

    **A.     UD's Title IX Policy**

UD has a Sexual Misconduct Policy that prohibits its "students"[2] from engaging in sexual misconduct, including "sexual assault,"[3] "off University property" if (1) the conduct was in connection with a University or University-recognized program or activity; (2) the conduct is alleged to have created a hostile environment for a member of the University community; (3) the conduct disrupts the normal functions and processes of the University and is egregiously offensive to the University's mission; or (4) the perpetrator's continued presence on campus poses a serious threat to persons or property regardless of where the conduct occurred. (D.I. 1 ("Compl.") ¶¶ 17, 27, 48; D.I. 8, Ex. A at 2.)

UD students who engage in sexual misconduct in violation of the Sexual Misconduct Policy are subject to sanctions "to eliminate the misconduct, prevent its recurrence[,] and remedy its effects," as well as "to promote safety or deter individuals from engaging in similar behavior in the future." (D.I. 8, Ex. A at 27.) Sanctions may include "any sanctions contained within the Student Guide to University Policies," and may comprise a combination of disciplinary sanctions—ranging from reprimand to expulsion—educational sanctions, and remedial measures. (Compl. ¶¶ 28-30; D.I. 8, Ex. A at 28.) The Student Guide to University Policies, in turn, describes

---

[1] I assume the facts alleged in the Complaint to be true for purposes of resolving the motion to dismiss for failure to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving the motion, I may consider facts alleged in the complaint and its attachments, matters of public record, and "document[s] integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[2] The policy defines "student" as "any individual who is currently enrolled, was enrolled within the previous two terms or is eligible to enroll for the next term." (D.I. 8, Ex. A at 9.)

[3] The policy defines "sexual assault" as "physical sexual acts committed when consent is not received, a person is physically forced, intimidated or coerced into a sexual act, or when a person is physically or mentally unable to give consent." (D.I. 8, Ex. A at 7.)

various types of sanctions in detail, including "Suspension and Ban from the University," which "requires a student to be withdrawn from all classes, suspended from University housing . . . , banned from all University facilities . . . , rendered ineligible to register for any University class, and prohibited from participating in University activities for the period of the suspension." (D.I. 8, Ex. B at 4.)  The Student Guide also states that UD "may impose any other sanction, depending upon the circumstances and the nature of the violation" and has "the absolute discretion to determine appropriate sanctions to be imposed." (*Id.* at 2, 5.)

The Sexual Misconduct Policy also establishes reporting, investigative, and disciplinary procedures for responding to complaints of sexual misconduct.  The policy instructs victims and witnesses of sexual misconduct to report the incident to UD's Title IX Coordinator.  (D.I. 8, Ex. A at 10.)  And the policy sets forth the specific procedures that the Title IX Coordinator must follow once she receives a report.  If, after a preliminary assessment, the Title IX Coordinator decides that the complaint warrants investigation, she is supposed to "meet with the respondent to provide information about the complaint and the process." (*Id.* at 23.)  During the meeting, the respondent is notified of their rights under the policy and "given in writing a copy of . . . the complaint, which will outline the incident(s) on which the complaint is based . . . ." (*Id.* at 24; Compl. ¶ 22.)

During the investigation, the respondent has various rights, including the rights to "[m]eet with the investigator and present evidence on their own behalf, identify witnesses or other third parties who might have relevant information[,] and identify or provide relevant documents or other information the respondent believes may be helpful to the investigation." (D.I. 8, Ex. A at 18; Compl. ¶¶ 24, 26.)  The investigator meets "separately" with the complainant, the respondent, and the witnesses.  (D.I. 8, Ex. A at 24.)

At the conclusion of the investigation, the investigator provides the Title IX Coordinator with a "Draft Report," which summarizes the information gathered. (*Id.* at 25.) The complainant and the respondent then each have the opportunity to review the report and provide a written response, which "may include, but is not limited to, additional questions the parties believe should be asked of the other parties or witnesses, new evidence they believe is relevant, and the impact the situation has had on them." (*Id.* at 26.)

The investigator then prepares and delivers to the Title IX Coordinator a "Final Report," which includes the investigator's finding as to whether "the preponderance of the information available to the investigator" shows that the respondent is "responsible" for sexual misconduct. (*Id.* at 25-27.) If the investigator finds the respondent responsible, the Final Report and the parties' responses to the Draft Report are sent to a Sanctioning Panel to determine the sanctions to be imposed. (*Id.* at 27-28.)

The complainant and respondent both have the opportunity to file a written appeal of the investigator's decision and the sanctions. (*Id.* at 29.) The written appeal and any responses thereto, as well as the evidence in the investigator's file, are reviewed in a "closed meeting by the Appellate Board." (*Id.* at 30.) The Appellate Board "[a]t its discretion" may also speak to the investigator, the Title IX Coordinator, the Sanctioning Panel, or the parties. (*Id.*) The Appellate Board, by majority vote, can sustain or deny the appeal, change the sanctions, receive additional information, or direct the Title IX Coordinator to investigate further. (*Id.* at 30-31.) The Appellate Board's decision "is final" and is "implemented immediately" by UD. (*Id.* at 31.) At each stage of the process, the complainant and respondent may be accompanied by up to two "support" individuals, who may be lawyers. (*Id.* at 9, 20.)

### B. Doe Investigation

Plaintiff Doe was enrolled as an undergraduate at UD from Fall 2016 through Spring 2019. (Compl. ¶ 8.) In mid-December 2018, UD informed Plaintiff in writing that a female student (referred to in the pleadings here as "Roe") had filed a complaint against Plaintiff for "sexual assault." (*Id.* ¶¶ 16, 18.) The notice did not provide any factual details underlying the allegation. (*Id.* ¶ 18.) Plaintiff later learned that the complaint "involved an encounter between Doe and Roe at Roe's apartment located on private property off of the University's campus between June 30, 2018 and July 1, 2018," when Plaintiff and Roe were on summer break. (*Id.* ¶ 47.)

UD initiated an investigation. According to Plaintiff's Complaint in this Court, the investigation conformed with some, but not all, of the procedures set forth in the Sexual Misconduct Policy. (*Id.* ¶¶ 22-26.) Plaintiff alleges that he had an initial meeting with the Title IX Coordinator to discuss the process, but Plaintiff was not "made aware of the specific allegations in [Roe's] Complaint" at that meeting. (*Id.* ¶ 25; *see also id.* ¶¶ 22-23.)

During the investigation, Plaintiff was interviewed by "a female attorney" who UD hired as an investigator. (*Id.* ¶ 25 n.1.) Plaintiff alleges, however, that "he was not advised of Roe's story until after it was too late: when he was put on the spot by the Investigator at the interview." (*Id.* ¶ 25.)

Plaintiff was also provided an opportunity to submit a written response to the allegations, as well as written questions for the investigator to ask Roe. (*Id.* ¶ 24.) After receiving that information, the investigator created a Draft Report, to which Plaintiff was permitted to provide written comment. (*Id.* ¶ 24.) The investigator then issued a Final Report, finding that Plaintiff was responsible for the sexual assault of Roe. (*Id.* ¶¶ 23-24.) Plaintiff was afforded the opportunity to make a written submission to the Sanctioning Panel, which he apparently did. (*Id.*

5

¶¶ 24, 32; *see also* D.I. 8 at 5.)

UD decided to suspend Plaintiff for two years.  (Compl. ¶ 34.)  Plaintiff appealed both the finding that he was responsible and the sanction, but his appeal was denied.  (*Id.* ¶¶ 24, 32.)  In accordance with UD's Sexual Misconduct Policy, Plaintiff was not afforded a live hearing or the opportunity to cross-examine Roe.  (*Id.* ¶ 26.)

By the time UD "suspended" Plaintiff at the conclusion of the proceedings in June 2019, Plaintiff had already completed all of the requirements needed to obtain his bachelor's degree.  (*Id.* ¶¶ 9, 13-15, 32, 33.)  He had participated in UD's formal graduation ceremony on June 1, 2019, and he planned to join the military as a commissioned officer.  (*Id.* ¶¶ 10, 13-15, 32, 33.)  Since his suspension, UD has refused to confer his bachelor's degree and is withholding his transcript.  (*Id.* ¶¶ 35, 36, 37.)

### C. Procedural History

Doe filed this action on October 16, 2019.  (D.I. 1.)  His Complaint originally named multiple defendants, but all except UD have now been dismissed.

The Complaint has seven counts.  Count I alleges that UD violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).  (*Id.* ¶¶ 58-64.)  Count II alleges that UD violated Plaintiff's due process rights under the Fourteenth Amendment of the United States Constitution, which is subject to redress under 42 U.S.C. § 1983.  (*Id.* ¶¶ 65-72.)  Count IV alleges breach of contract (*id.* ¶¶ 77-81), and Count III seeks a declaratory judgment related to Counts I, II, and IV (*id.* ¶¶ 73-76).  Count V alleges promissory estoppel (*id.* ¶¶ 82-86), and Count VI alleges breach of the implied covenant of good faith and fair dealing (*id.* ¶¶ 87-91).  Finally, Count VII purports to seek "specific performance requiring [UD] to issue the Bachelor's Degree, Diploma, and untarnished Transcript" to Plaintiff.  (*Id.* ¶¶ 92-96.)

On November 8, 2019, UD (and the other then-defendants) moved to dismiss all of the counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (D.I. 7.)  On August 6, 2020, the motion was referred to me for a Report and Recommendation.  (D.I. 16.)  On August 11, 2020, I ordered the parties to file supplemental briefing addressing the impact, if any, of the Third Circuit's recent decision in *Doe v. University of the Sciences*, 961 F.3d 203 (3d Cir. 2020).  (D.I. 16, D.I. 18, D.I. 19.)  In its supplemental letter brief, UD withdrew its motion to dismiss as to Count II (due process).  (D.I. 19.)

I heard oral argument on August 24, 2020.  ("Tr. __.")  The parties subsequently stipulated to dismiss all of the defendants except UD.  (D.I. 20, 22.)

## II.     LEGAL STANDARD

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A possibility of relief is not enough. *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal conclusions are not. *Id.* at 679.  "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic

7

deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (internal marks omitted).

## III. DISCUSSION

### A. Title IX Claim (Count I)

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 28 U.S.C. § 1681(a). To state a claim under Title IX, the alleged facts must support a plausible inference that the school discriminated against the plaintiff on the basis of sex. *Univ. of Scis.*, 961 F.3d at 209.

UD argues that the Complaint fails to plausibly allege that UD discriminated against Plaintiff on the basis that he is a man. I agree. Plaintiff complains that UD violated his constitutional rights and its own policies, but the Complaint lacks specific, non-conclusory allegations supporting an inference that UD's treatment of him was related to his male sex.

Plaintiff points to the following allegations in his Complaint in support of his Title IX claim: (1) "the predominant sex of complainants is female and the predominant sex of respondents is male" (Compl. ¶ 56); (2) UD "lacked jurisdiction" to punish Plaintiff because the alleged incident occurred off campus during the summer (*id.* ¶ 46; D.I. 10 at 7-8); (3) UD's investigation procedure did not comply with its own Sexual Misconduct Policy (Compl. ¶¶ 22, 23, 25); and (4) UD was pressured by the federal government to take action against students accused of sexual assault or risk losing federal funding, as evidenced by the U.S. Department of Education's "2011 Dear Colleague Letter" (*id.* ¶¶ 51, 52). I conclude that those allegations, taken alone or together, do not support a plausible inference of sex discrimination.

I take as true Plaintiff's contention that "the predominant sex of complainants is female

and the predominant sex of respondents is male" (Compl. ¶ 56), but that does not suggest sex discrimination in the disciplinary process. A court cannot plausibly infer that a higher rate of sexual assaults committed by men against women, or complaints filed by women against men, indicates discriminatory treatment of males accused of sexual assault. *See Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017); *see also Doe v. Cummins*, 662 Fed. App'x 437, 453-54 (6th Cir. 2016).

Plaintiff also contends that UD "lacked jurisdiction" because the alleged sexual assault occurred off campus over summer break. (Compl. ¶ 46.) I don't take Plaintiff to seriously contest that UD's Sexual Misconduct Policy, by its terms, reaches students who commit sexual assaults against other students off campus in the summer. Rather, Plaintiff appears to be arguing that Title IX itself prohibits UD from enacting a policy that covers off-campus assaults where the alleged conduct is (in Plaintiff's view) not that serious. (Compl. ¶ 38; *see also id.* ¶¶ 21, 46-48, 59, 60, 62; D.I. 10 at 7-8; Tr. 42:3-44:24.) But Plaintiff cites no authority in support of the proposition that Title IX puts such constraints on UD.[4] Regardless of how Plaintiff frames his argument, the relevant question in assessing Plaintiff's Title IX claim is whether UD discriminated against him on the basis of his sex. That UD has a policy that prohibits both its male and female students from engaging in sexual assault against other students—including off campus, if the conduct is alleged to have created a "hostile environment" for the victim or "disrupts the normal functions and process of the University"—does not support an inference of sex discrimination. Plaintiff does

---

[4] The *Yeasin* case cited by Plaintiff is wholly inapposite. *See Yeasin v. Univ. of Kan.*, 51 Kan. App. 2d 939, 947 (Kan. 2015) (on direct review of the act of a state agency pursuant to the Kansas Judicial Review Act, holding that a university's student code did not reach off campus when, by its terms, it covered conduct "[w]hile on University premises or at University sponsored or supervised events"); *see also id.* at 955 (declining to address "whether Title IX permits the University to extend its jurisdiction to discipline student conduct occurring off campus"); *see also* Tr. 48:13-49:11.

not allege, for example, that UD takes action on a higher percentage of off-campus assault complaints filed by females than those filed by males.[5]

Nor does Plaintiff's allegation that UD violated its own policy suggest sex discrimination. Plaintiff alleges that UD failed to comply with the procedures set forth in its Sexual Misconduct Policy when it failed to give him a copy of the complaint at his initial meeting with the Title IX Coordinator. (Compl. ¶¶ 22, 23, 25; D.I. 8, Ex. A at 24.) But Plaintiff has not alleged non-conclusory facts that support a plausible inference that UD's actions during or after the investigatory period had a nexus to the fact that Plaintiff is male.

That leaves Plaintiff's allegation that UD discriminated against him on the basis of sex because the federal government pressured universities to punish students accused of sexual assault. The Third Circuit, however, recently joined the majority of federal courts to hold that "allegations about pressure from [the United States Department of Education] and the 2011 Dear Colleague Letter alone cannot support a plausible claim of Title IX sex discrimination." *Univ. of Scis.*, 961 F.3d at 210.

Finally, the allegations taken together do not support a plausible inference of sex discrimination. Plaintiff contends that UD committed various wrongs against him, but he does not allege specific facts to connect those wrongs to his male sex. Plaintiff points to the Third Circuit's decision in *Doe v. University of the Sciences* and the Sixth Circuit's decision in *Doe v. Baum*, but those cases highlight the deficiencies in Plaintiff's pleading. *See Univ. of Scis.*, 961 F.3d at 209

---

[5] Plaintiff alleges that "Complaints are processed despite a lack of jurisdiction where there are female accusers and alleged male perpetrators" (Compl. ¶ 57), but he does not allege that such complaints are less likely to be processed when the accusers are male. (*See* Tr. 45:4-48:3, 57:14-59:7.)
  I acknowledge Plaintiff's point that "it is not easy to compile specific evidence of gender bias" (D.I. 10 at 8), but he is required to satisfy the pleading standards set forth in *Iqbal* and *Twombly*. Conclusory allegations are not enough.

(reversing district court's dismissal of Title IX claim where male plaintiff alleged that the university (1) "investigated him but chose not to investigate three other female students who allegedly violated sexual misconduct policy" and (2) charged the plaintiff because his female accuser was intoxicated when they had sex, but failed to consider whether the accuser should have been charged due to the plaintiff's intoxication); *Doe v. Baum*, 903 F.3d 575, 576 (6th Cir. 2018) (reversing dismissal of Title IX claim where, against the "backdrop" of federal pressure to take sexual misconduct complaints seriously, the male plaintiff alleged that the university "credited exclusively female testimony," without taking into account the potential bias of the female witnesses, and "rejected all of the male testimony . . . [as] lack[ing] credibility because many of them were fraternity brothers of [the plaintiff]"). Unlike the plaintiffs in those cases, Plaintiff Doe does not plead facts suggesting UD's favor of females over males either generally or specifically in relation to Plaintiff's investigation and suspension. For example, Plaintiff does not allege any statements by officials that would suggest sex bias in his proceedings, nor does he suggest that UD treats males accused of sexual assault differently than females accused of sexual assault. Plaintiff alleges that UD took actions that adversely affected him, but he does not plead facts suggesting a nexus between UD's actions and his male sex.

In sum, Plaintiff has failed to plead specific facts supporting an inference that UD discriminated against him based on his sex. Accordingly, I recommend that the Court dismiss his Title IX Claim (Count I).

### B.     Contract and Promissory Estoppel Claims (Counts IV-VII)

UD also moves to dismiss Doe's state law contract claims for failure to state a claim.[6] I recommend that the Court deny UD's motion as to the breach of contract/specific performance (Counts IV, VII) and promissory estoppel (Count V) claims.

To state a claim for breach of contract under Delaware law, the plaintiff must allege the following: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[7]  *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  To state a claim for promissory estoppel, the plaintiff must allege facts supporting the following: "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise."  *Chrysler Corp., (Del.) v. Chaplake Hldgs., Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

In its briefing, UD argued that the breach of contract and promissory estoppel claims should be dismissed for the same reason, namely, that Plaintiff failed to identify a "specific" promise that the university failed to honor.  But during oral argument, counsel for UD acknowledged that a breach of contract claim could be premised upon a plausible allegation that the university failed to

---

[6] UD originally asked the Court to dismiss all of Plaintiff's federal claims and decline supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c).  (D.I. 8 at 16.)  UD has now withdrawn its motion to dismiss the federal due process claim (Count II), and the Court has supplemental jurisdiction over the state law claims because they form part of the same case or controversy.  28 U.S.C. § 1367(a).

[7] Count VII is styled as a claim for "Specific Performance."  Of course, specific performance is a remedy for breach of contract and not its own cause of action.  *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 828 F. Supp. 2d 720, 727 (D. Del. 2011).  UD's sole argument for dismissing Count VII is that the Complaint otherwise fails to state a breach of contract claim.  Accordingly, I treat the two together.

comply with its own Sexual Misconduct Policy.[8] (Tr. 31:22-32:6.) There is such an allegation here: Plaintiff alleges that UD failed to provide him with a copy of Roe's complaint at the initial meeting as required by the policy, and that he was interviewed without having that information. (Compl. ¶¶ 22, 23, 25, 88; D.I. 8, Ex. A at 24.) UD has not argued another basis to dismiss the breach of contract/specific performance and promissory estoppel claims. Accordingly, I recommend that the Court deny UD's motion as to Counts IV, V, and VII.

UD also asks the Court to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Count VI). To plead a claim for breach of the implied covenant, "a litigant must allege a specific obligation implied in the contract, a breach of that obligation, and resulting damages." *Fortis Advisors LLC v. Dialog Semiconductor PLC*, No. 9522-CB, 2015 WL 401371, at *3 (Del. Ch. Jan. 30, 2015). The implied covenant does not impose a "free-floating requirement that a party act in some morally commendable sense." *Allen v. El Paso Pipeline GP Co., L.L.C.*, 113 A.3d 167, 182–183 (Del. Ch. 2014), *aff'd,* 2015 WL 803053 (Del. Feb. 26, 2015). Rather, it is a "limited and extraordinary legal remedy." *Nemec v. Shrader*, 991 A.2d 1120, 1128 (Del. 2010). It is "rarely invoked successfully." *MHS Capital LLC v. Goggin,* No. 2017-0449-SG, 2018 WL 2149718, at *11 (Del. Ch. May 10, 2018). It provides "a way to deal with unanticipated developments or to fill gaps in [a] contract's provisions[,]" *Overdrive, Inc. v. Baker & Taylor, Inc.*, No. 5835-CC, 2011 WL 2448209, at *8 (Del. Ch. June 17, 2011) (internal marks omitted), but only where it is clear that the parties would have agreed to the obligation had they considered the issue. *Fitzgerald v. Cantor*, No. 16297-NC, 1998 WL 842316, at *1–2 (Del. Ch.

---

[8] *Cf. Univ. of Scis.*, 961 F.3d at 206, 211–16 (holding that an expelled student plausibly alleged that his private college breached a contract by failing to provide him the "fair and equitable" treatment promised in the school's sexual misconduct policy); *see also* Tr. 28:2-32:12 ("Counsel for UD: We haven't distinguished between the public or private nature of the defendant in responding to [Plaintiff's] contract claims.").

13

Nov. 10, 1998). In addition, the implied covenant cannot be used where the contract already speaks to the obligation at issue. *Sharma v. TriZetto Corp.*, No. 15-419-LPS, 2016 WL 1238709, at *5 (D. Del. Mar. 29, 2016).

Plaintiff's complaint does not allege a "specific obligation," not otherwise spoken to in the parties' "contract," that the parties plausibly would have agreed to had they considered the issue. The essence of Plaintiff's allegations are that UD treated him unfairly, but that is insufficient to state a claim for breach of the implied covenant of good faith and fair dealing. I recommend that the Court dismiss Count VI.

### C. Declaratory Judgment Claim (Count III)

That leaves Plaintiff's declaratory judgment claim (Count III). In its briefing, UD's sole argument for dismissal was that the Declaratory Judgment Act does not create an independent cause of action and that all of Plaintiff's other claims fail to state a claim. But UD has now withdrawn its motion to dismiss Plaintiff's due process claim (and, as set forth above, I conclude that Plaintiff has stated contract and promissory estoppel claims). As UD has proffered no other basis to dismiss the declaratory judgment claim, I recommend that the Court deny UD's motion to dismiss Count III.

## IV. CONCLUSION

For the reasons explained above, I recommend that UD's motion be GRANTED-IN-PART as to Counts I and VI and DENIED-IN-PART as to Counts III, IV, V and VII. As stated above, UD withdrew its motion as to Count II.

Counts I and VI should be dismissed without prejudice. I recommend that Plaintiff be granted leave to amend his complaint to address the deficiencies within 21 days.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B),(C),

14

Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated October 9, 2013, a copy of which can be found on the Court's website.

Dated: October 14, 2020

_____
Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE